UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JOHNNY M. AUSTIN,                     )
                                      )
          Plaintiff,                  )
                                      )
                                      )
v.                                    )     No. 3:13-CV-629
                                      )     (REEVES/SHIRLEY)
CAROLYN W. COLVIN,                    )
Acting Commissioner of Social Security, )
                                      )
          Defendant.                  )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion, filed on February 20, 2014.

[Doc. 14]. The Court interprets this document as a motion for judgment on the pleadings. Also

before the Court is Defendant's Motion for Summary Judgment and Memorandum in Support

[Docs. 16 & 17]. Plaintiff Johnny M. Austin seeks judicial review of the decision of the

Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin,

Acting Commissioner of Social Security ("the Commissioner").

On July 13, 2010, Plaintiff protectively filed a Title II and Title XVIII application and an

application for supplemental security income pursuant to Title XVI and XIX with an alleged

onset date of September 2010. [Tr. 126; 105-07; 109-12; 41]. The Social Security

Administration denied Plaintiff's application initially and upon reconsideration. [Tr. 53-59; 64-

66]. Plaintiff timely filed a request for a hearing, and appeared before Administrative Law Judge

K. Dickson Grissom, on August 8, 2012 in Knoxville, Tennessee. [Tr. 70-71; 34]. The ALJ

issued an unfavorable decision on January 18, 2013. [Tr. 8-25]. Plaintiff filed his appeal of the decision, which the Appeals Council declined to review on August 22, 2013. [Tr. 7; 1-6].

Having exhausted his administrative remedies, Plaintiff filed a complaint with this Court on October 18, 2013, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since September 2010, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following impairment, the <u>combination</u> of which is "severe": diabetes mellitus; diabetic retinopathy with vitreous hemorrhage of the left eye; hypertension; major depressive disorder; anxiety disorder, not otherwise specified; rule out cognitive disorder, not otherwise specified; rule out amnestic disorder; and rule out borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except no climbing; no work around hazards such as dangerous machinery or unprotected heights; no operation of motor vehicles; no bright lights or work in sunshine; no acute vision at 20 feet or more; limited to work involving only simple non-detailed tasks, only superficial contact with coworkers and the

general public; supervision should be direct and non-confrontational; and changes in the workplace infrequent and gradually introduced.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 17, 1967 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 13-21].

## II.  DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

3

death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her

4

v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the Court will not "try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

5

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See Id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.   EVIDENCE

### A.   *Medical Evidence*

Plaintiff protectively filed an application for Social Security disability benefits on July 13, 2010 with an alleged onset date of September 2010. [Tr. 126; 41]. Plaintiff was 42 years old on the alleged onset date. [Tr. 125]. He received a general equivalency diploma and took courses to become a licensed mechanic. [Tr. 39]. Plaintiff stated that he ceased work due to being laid off in December 2008, and he alleged that his conditions, including diabetes Type I,

6

depression, brain and eye hemorrhages, high blood pressure, hypertension, and intracranial hemorrhaging limited his ability to work. [Tr. 130].

Plaintiff reports that he has been a type 1 diabetic for the majority of his life. [Tr. 208; 282]. In 2008, Plaintiff began having trouble with his eyes, reporting a history of corneal erosion in his left eye. [Tr. 211]. During an exam in October 2008, Plaintiff was assessed with 20/20 vision and diagnosed with "[i]nsulin-dependent diabetes mellitus with no diabetic retinopathy." [Id.]. In April 2009, Plaintiff's vision was assessed at 20/15 on the right and 20/20 on the left with mild inflammation in the left eye. [Tr. 209]. Plaintiff was found to have "[p]ostraumatic recurrent erosion syndrome[,] left eye" but there were again no signs of diabetic retinopathy. [Id.]. In November 2009, Plaintiff reported a painless dark floater in his left eye. [Tr. 208]. He was diagnosed with a vitreous hemorrhage without diabetic retinopathy and put on bed rest for two days. [Id.].

Plaintiff sought treatment at Southeastern Retina Associates beginning in 2009 and underwent a laser eye procedure to correct a vitreous hemorrhage on February 1, 2010. [Tr. 321]. Plaintiff developed another vitreous hemorrhage in 2011 and underwent a second laser eye procedure on July 20, 2011 with a postoperative diagnosis of "[p]roliferative diabetic retinopathy with vitreous hemorrhage, left eye. [Tr. 314; 312]

Plaintiff sought treatment for headaches in 2008 with Knoxville Neurology Specialists. [T. 180-89]. Plaintiff presented on June 26, 2008 with an intracranial hemorrhage. [Tr. 184]. During this initial exam, Plaintiff was informed that he should not work "because he is lifting and this would not be in his best interest." [Tr. 185]. A CT scan was performed on July 1, 2008 and revealed "[e]xtensive cerebral calcifications suggesting calcium metabolic disorder." [Tr. 186]. During a follow up exam on July 10, 2008, Plaintiff reported suicidal thoughts "because

7

he has not been able to work and this has been driving him crazy, but he does not have any plans." [Tr. 182]. Plaintiff was advised that the cerebral calcifications were most likely a result of a parathyroid hormone and was told he could return to work. [Tr. 183]. On November 13, 2008, Plaintiff was examined for a "follow up of his neuropathy," and Dr. Darrell Thomas found that "[h]is neuropathy is relatively stable. He has no new complaints or problems." [Tr. 181].

Plaintiff received psychiatric treatment between December 2007 and June 2009 from Dr. Michael F. Smith, staff psychiatrist at Cherokee Health Systems. [Tr. 190-205]. During this time, Dr. Smith treated Plaintiff for a mood disorder and rule out personality and bipolar disorders. [Id.]. He prescribed and adjusted various psychotropic medications to deal with these issues, including lithium, alprazolam, and clonazepam. [Id.].

Dr. Patricia A. Maffeo conducted a psychological evaluation of Plaintiff on January 13, 2011. [Tr. 252-56]. Her diagnostic impressions included major depressive disorder, rule out cognitive disorder, rule out amnestic disorder, rule out borderline intellectual functioning, status post hemorrhages in brain and eyes, and a Global Assessment of Functioning ("GAF") of 50. [Tr. 254]. She found that Plaintiff was mildly impaired in understanding and remembering, moderately impaired in sustaining concentration and persistence, and had mild to moderate limitations interacting with others and adapting to changes and requirements. [Tr. 255]. Rebecca P. Joslin, a psychological state agency consultant, submitted a psychiatric review on January 25, 2011. [Tr. 257-70]. She found that Plaintiff was mildly impaired in activities of daily living and moderately impaired in maintaining social functioning, concentration, persistence, or pace. [Tr. 267]. She noted his reported symptoms to be credible. [Tr. 269].

Dr. Eva Misra conducted a physical examination on February 17, 2011 and found that Plaintiff could lift and carry up to twenty pounds frequently and up to fifty pounds occasionally.

8

[Tr. 276].  She noted that he could sit, stand, or walk for up to six hours without interruption and up to eight in an eight-hour workday.  [Tr. 277].  She stated that Plaintiff could frequently operate controls with both feet and could frequently reach, handle, finger, feel, push, or pull.  [Tr. 278].  Dr. Misra limited Plaintiff to never climbing stairs, balancing, or stooping but could occasionally kneel, crouch, or crawl.  [Tr. 279].  She did not find that Plaintiff was restricted in any daily activities such as shopping, walking without ambulation, using public transport, or preparing simple meals.  [Tr. 281].

### B.  Other Evidence

The ALJ conducted a hearing on August 8, 2012, in which the Plaintiff and Vocational Expert ("VE"), Dr. Ernest Brewer, testified.  [Tr. 34-48].  Plaintiff testified that he had migraines at least once a month and often had dull, aching headaches.  [Tr. 43].  He stated that when his eyes were not bothering him he could perform household chores such as vacuuming, cleaning, and washing clothes, drive and travel alone, go grocery shopping, and do yard work after the sun went down.  [Tr. 43-44].

The ALJ issued an unfavorable decision on January 18, 2013.  [Tr. 8-25].  The ALJ assessed Plaintiff with a RFC to perform medium work, [Tr. 16], finding that although Plaintiff's impairments could be expected to cause some of the alleged symptoms, the Plaintiff's reports of their "intensity, persistence and limiting effects of these symptoms are not entirely credible[.]" [Tr. 17].  The ALJ did not specify how much weight was given to Plaintiff's treating physicians, but noted that "no restrictions [were] recommended by the claimants treating physicians. Furthermore . . . the record [was left] open for a medical source statement from the claimant's treating physician, but none was submitted." [Tr. 19].  Dr. Misra and Dr. Maffeo's opinions were accepted "insofar as they are consistent with the residual functional capacity assigned herein."

9

[Id.].  The state agency medical and psychological consultants were granted some weight due to their qualifications and the consistency of their opinions with the record as a whole.  [Id.].

Plaintiff appealed this decision and the Appeals Council declined review on August 22, 2013.  [Tr. 7; 1-6].

## V.    POSITIONS OF THE PARTIES

Plaintiff argues that the ALJ's unfavorable decision is not based on substantial evidence. Plaintiff contends that he is disabled because he cannot return to any of his previous work, and that his health problems have become more severe during the process of applying for benefits. The Plaintiff relies on the statement by Dr. Darrell Thomas on June 26, 2008 that he should not work "because he is lifting and this would not be in his best interest." [See Tr. 185].  He further cites to the testimony of the VE, Dr. Ernest Brewer, who in answering a second hypothetical question regarding an individual with Plaintiff's limitations who would be absent ten percent of the time from full time employment, stated that he did not know of any jobs such an individual could perform.  [See Tr. 48].  Plaintiff claims that this evidence should have resulted in a favorable decision.

The Commissioner responds that there is substantial evidence to support the ALJ's decision.  The Commissioner argues that the ALJ properly weighed the medical evidence and Plaintiff's daily activities in assessing his RFC and credibility.  The Commissioner further contends that the Plaintiff misconstrued the VE's testimony and that any allegations of increased severity of symptoms since the hearing are irrelevant because the court is confined to review only the evidence that was available to the ALJ.

## VI.    ANALYSIS

The Court will address each of the issues presented by Plaintiff in turn.

## A.    Whether Substantial Evidence Supports the ALJ's Decision

The Court finds that the ALJ's decision is based on substantial evidence.  The plaintiff bears the burden of proof at the first four steps of the disability analysis[1], Walters, 127 F.3d at 529, and upon review, the plaintiff bears the burden of proving that he is entitled to benefits. Boye, 46 F.3d at 512 (citing Halsey, 441 F.2d 1230).  The Court finds that the Plaintiff failed to meet this burden.

### 1.  Weighing Medical Evidence in Assessing Plaintiff's RFC

The Court finds that the ALJ properly weighed the medical evidence of record in determining Plaintiff's RFC.  Under the Social Security Act and its implementing regulations, an ALJ will consider all the medical opinions in conjunction with any other relevant evidence received in order to determine if a claimant is disabled.  20 C.F.R. § 404.1527(b).

An ALJ will consider "every medical opinion" received and will give controlling weight to the opinions of treating physicians.  See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will

---

[1] The Court acknowledges Plaintiff's argument that the ALJ "notated in his sequential evaluation under step 3, that the combination of my impairments is severe and this should have led to a fully favorable decision[.]"  The Court finds this argument to be without merit and inconsistent with the law.  A finding of a severe impairment(s) is only the second step in a disability analysis.  See Walters, 127 F.3d at 529.  A claimant is not considered disabled unless such a severe impairment meets a listed requirement or upon a favorable determination at step five of the disability analysis.  See id.  Neither of these scenarios is applicable in this case and thus Plaintiff's argument is not well taken.

give it controlling weight."). Where an opinion does not garner controlling weight, the appropriate weight to be given an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996). Nonetheless, although a treating physician's diagnosis is entitled to great weight, "the ultimate decision of disability rests with the administrative law judge." Walker v. Sec'y of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir. 1992) (citing King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

The treating physician rule is inapplicable where treating physicians have failed to provide medical opinions. If the record is replete with treatment records, but absent any medical opinion or diagnoses regarding functional capacity, treating physicians are not entitled to controlling weight, nor must the court address the factors set forth 20 CFR §§ 404.1527(c) and 416.927(c). See Terrell v. Comm'r of Soc. Sec., 12-CV-11781, 2013 WL 5178541, at *12 (E.D. Mich. Sept. 10, 2013) (explaining that where a plaintiff cannot cite to any treating physician opinion in the record that is contrary to the ALJ's decision "the undersigned cannot conclude that

the ALJ erred in evaluating the record regarding these physicians."); see also Hazelwood v. Comm'r of Soc. Sec., 2012 WL 5930439, at *4 (S.D. Ohio Nov. 27, 2012) (finding that "w]ithout any opinion evidence from plaintiff's treating physicians, the Court cannot conclude that the ALJ erred by not applying the factors enumerated in §§ 404.1527(c) and 416.927(c).").

Further, an ALJ does not measure medical evidence in a vacuum, but rather considers physician opinions in conjunction with the record as a whole. See 20 C.F.R. § 404.1527(b) (explaining that in considering medical evidence, the SSA "will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). The agency will consider such evidence as "statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work." 20 C.F.R. § 404.1529(a).

In this matter, the Court finds that the ALJ properly considered the medical evidence in assessing Plaintiff's RFC. Plaintiff argues that the ALJ did not correctly weigh the medical evidence, relying on a statement from his treating physician which he contends is demonstrative of his disability and inability to work. [Doc. 14 at 2; see Tr. 185] (Dr. Darrell Thomas's statement on June 26, 2008 that Plaintiff should not work "because he is lifting and this would not be in his best interest.").

The Court is not persuaded by this argument for several reasons. First, this statement was made prior to Plaintiff's alleged onset date of September 2010, [see Tr. 41], and therefore is not illustrative of any functional limitations between the alleged onset date and the date of hearing. Not only does this statement concern Plaintiff's condition over two years prior to his alleged onset date, Dr. Thomas's statement is conditional and limited to Plaintiff's past relevant work.

13

[See Tr. 185]. The examination report concludes that "[t]he patient was told upon follow-up that he can discuss with Dr. Thomas the test results, as well as long term ability to work in his chosen profession." [Id.]. Not only does this statement have nothing to do with the Plaintiff's ability to perform other jobs that exist in the national economy, but it is strictly conditional on the Plaintiff's medical condition and the work he was performing more than two years prior to onset. Therefore, the Court finds that this statement is not conclusive of disability and the ALJ was correct in not granting it more weight.

The Court finds that the ALJ properly considered Plaintiff's treating physician records in determining his RFC. Although there are ample treatment records, none of Plaintiff's treating physicians issued a medical opinion about his impairment or resulting functionality. As the ALJ explained in his decision, "no restrictions [were] recommended by the claimant's treating physicians. Furthermore . . . the record [was left] open for a medical source statement from the claimant's treating physician, but none was submitted." [Tr. 19]. During the hearing, the ALJ specifically requested treating physician statements regarding Plaintiff's limitations. [See Tr. 44] (the ALJ asked Plaintiff's counsel; "we don't have any sort of a statement from any of the treating doctors as to his limitations[?]" Counsel responded in the negative and the ALJ stated that he would "hold the record open for ten days, and if you can get such a form, it would certainly be beneficial I think to help me in figuring out what's going on."). The record is absent of any such assessment.

Even without a treating physician opinion, the ALJ fully considered Plaintiff's treating physician records. He noted that his doctors had "prescribed conservative treatments," [Tr. 17], and found that in 2008 Plaintiff's alleged impairments were "present at approximately the same level of severity prior to the alleged onset date." [Tr. 18]. The ALJ found that not only did

14

Plaintiff's treating physicians allow him to return to work, but that Plaintiff did not cease work based on his conditions but because of "a business-related layoff[.]" [Id.].

Based on the lack of treating physician medical opinions, the ALJ properly considered the assessments of Dr. Misra, Dr. Maffeo, and the state agency medical and psychological consultants in determining Plaintiff's RFC. See Christian v. Astrue, 2:07-CV-882, 2008 WL 4056356 (S.D. Ohio Aug. 21, 2008) (finding that non-treating medical expert opinions provided substantial evidence for the ALJ's RFC determination in the absence of treating physician medical opinions). In considering Dr. Misra and Dr. Maffeo's records, the ALJ noted both of their credentials and expertise and found their opinions to be "supported by medical signs and clinical findings subsequent to" their interviews, examinations, and evaluations. [Tr. 19].

The ALJ similarly explained the weight given to the state agency consultants. [See id.] (finding that although the consultants were non-examining, they are entitled to *"some* weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions[.]") (emphasis in the original). These "other reasons" included the ALJ's consideration of Plaintiff's daily activities such as performing household chores, cooking, driving, shopping, and visiting with friends. [Tr. 18]. The ALJ further considered Plaintiff's lack of mental health treatment after his alleged onset date and the Plaintiff's own testimony that he no longer suffered from mental health problems. [Id.; see Tr. 42]. The ALJ noted Plaintiff's consistent tobacco use, finding such a habit inconsistent with Plaintiff's allegations that he is indigent and unable to afford medical treatment. [See Tr. 18] (explaining that "[o]ne would expect that if the claimant's impairments were as limiting as he has alleged . . . that he would use the money he spends on cigarettes to instead pay for his allegedly unaffordable medical care.").

Based on the ALJ's consideration of the record as a whole, his thorough explanation of

the weight assigned to the various medical opinions, and the consistency of the record with the RFC, the Court finds that there is substantial evidence to support the ALJ's RFC assessment.

### 2. Increased Severity of Symptoms

The Plaintiff argues that the ALJ's decision should be overturned due to the increased severity of his symptoms throughout the process of applying for disability benefits. The Court finds this argument to be without merit. The Court reviews a closed record and can only consider evidence that was before the ALJ. See Mathews v. Weber, 423 U.S. 261, 270 (1976) ("The magistrate is directed to conduct a preliminary review of a closed administrative record closed because under s 205(g) of the Social Security Act, 42 U.S.C. s 405(g), neither party may put any additional evidence before the district court."); Brainard v. Sec'y of Health & Human Servs., 889 F.2d 679, 681 (6th Cir. 1989) (noting that "[j]udicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence . . . The scope of our review is limited to an examination of the record only.").

Although the Court may not consider new evidence in its substantive review of the ALJ's denial of benefits, Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001), pursuant to 42 U.S.C. § 405(g), the Court may "remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." Id. (quoting Cline v. Comm'r of Soc. Sec. 96 F.3d 146, 148 (6th Cir. 1996)). The proponent of the new evidence bears the burden of proving all three elements. See Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 589 (6th Cir. 2005).

The Court finds that the Plaintiff failed to meet this burden. Primarily, Plaintiff fails to assert that his increased symptoms occurred prior to the administrative hearing on August 8,

2012. He merely states that his symptoms have increased "[s]ince I have begun this endeavor to get approved for my social security benefits[.]" [Doc. 14 at 2]. If Plaintiff means that his symptoms have increased since filing his Social Security application on July 13, 2010 than any evidence of increased impairment should have gone before the ALJ, and the Court finds that the Plaintiff had ample time to make any new or increased impairments part of the record between July 2010 and January 2013.

However, even if Plaintiff is asserting that his increased symptoms occurred after the administrative hearing on August 8, 2012, he has failed to show that this evidence is new, material, or that good cause exists for not bringing it before the ALJ. Plaintiff alleges increased hemorrhaging in his eyes brought on by coughing and sneezing and a decreased ability to perform daily activities. [See id.]. He also notes continued treatment for his neuropathy. [See id.] (stating that he is unable to rest due to his "diabetic neuropathy in both legs for which Blount county health department is treating me for.") Yet the Plaintiff offers no medical evidence of these increased symptoms.

The Court finds that these symptoms are not new. The record is replete with records of Plaintiff's eye condition and ability to perform daily activities. The ALJ also had access to treatment records for Plaintiff's neuropathy. [See Tr. 181] (Dr. Thomas's records from November 2008 in which he noted that "[h]is neuropathy is relatively stable. He has no new complaints or problems."); [Tr. 282] (in February 2011, Dr. Misra found that Plaintiff "is not reliable on his history" and that "[h]e denies any neuropathy or diabetic ulcers."). Without any medical evidence documenting new conditions or new symptoms, the Court finds that the Plaintiff is simply alleging the same symptoms already fully documented in the record. See Pickard v. Comm'r of Soc. Sec., 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002) (quoting Elliott

17

v. Apfel, 28 F. App'x 420, 424 (6th Cir. 2002) ("New evidence must indeed be new; it cannot be cumulative of evidence already in the record.").

The Court further finds that Plaintiff's allegedly intensified symptoms are not material. Evidence is material "only if there is a 'reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" Foster, 279 F.3d at 357 (quoting Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir.1988). In addition, "[e]vidence is material if it is probative of the claimant's condition during the time period at issue before the ALJ." Pickard, 224 F. Supp. 2d at 1171. Because the record fully documents these conditions, the Court finds that Plaintiff's allegations would not have changed the ALJ's decision.

Further, there is a lack of good cause for not presenting evidence of these alleged symptoms to the ALJ. Good cause is shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." Foster, 279 F.3d at 357. During the hearing, the ALJ specifically requested treating physician records, left the record open for ten days to secure such proof, and the Plaintiff failed to produce the requested information.  [See Tr. 44].  The Plaintiff continues to make allegations of impairment without providing substantiating medical evidence, and therefore the Court finds a lack of good cause for not presenting these allegations to the ALJ prior to the administrative hearing.

### 3. *Vocational Expert Analysis*

Plaintiff contends that the ALJ erred by not relying on Dr. Brewer's response to the second hypothetical that encompassed Plaintiff's alleged limitations.  Plaintiff argues that Dr. Brewer's response, that there would not be any jobs suitable for an individual that would be absent ten percent of the time during a forty hour week, "should have resulted in a fully

18

favorable decision[.]" [Doc. 14 at 2]. The Court disagrees. First and foremost, the Plaintiff does not cite the Court to any medical record, report, or other evidence establishing why Plaintiff would be absent from work ten percent of the time during a forty-hour work week. The Court declines any invitation to scour the record for any such anecdotal entry.

In step five of the sequential disability analysis, the burden shifts to the Commissioner, who must show that "[e]ven if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled. Walters, 127 F.3d at 529. In order to meet this burden, the Commissioner must show that substantial evidence exists to support plaintiff's vocational qualifications to perform other work. Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987). Substantial evidence is often established by the testimony of a vocational expert in response to a "hypothetical" question, but only "if the question accurately portrays [plaintiff's] individual physical and mental impairments." Id.; see also Infantado v. Astrue, 263 F. App'x 469, 476 (6th Cir. 2008) (explaining that "although a hypothetical question need not incorporate a listing of the claimant's medical conditions, the vocational expert's testimony, to be reliable, must take into account the claimant's functional limitations, i.e., what he or she "can and cannot do.") (quoting Webb v. Comm'r of Social Sec., 368 F.3d 629, 632–33 (6th Cir.2004)). A claimant's limitations are based on the assessed RFC and vocational factors such as age, education, and experience. See Walters, 127 F.3d at 529.

Here, the ALJ asked the VE two hypothetical questions. [Tr. 46-48]. The first hypothetical described an individual with the ability to perform medium work in accordance with the "claimant's age, education, work experience, and residual functional capacity." [See Tr. 46].

19

The VE responded that such an individual could work in such occupations as hand packager, dishwasher, or janitor. [Tr. 47]. The second hypothetical is described above. In his decision, the ALJ assessed the Plaintiff with a RFC commensurate with the first hypothetical and thus relied on the VE's response to the first question, [Tr. 21], which the Court finds appropriate in light of there being no evidentiary basis presented in support of the second hypothetical.

In actuality, the Plaintiff's argument is not that the ALJ improperly ignored the VE's response to the second hypothetical, but that the ALJ erred in his RFC assessment. The Court has already found otherwise. The ALJ's RFC determination is based on substantial evidence and therefore, the ALJ properly considered the VE's response to the first hypothetical, which encompassed Plaintiff's assessed RFC. The Plaintiff's argument is without merit and the Court finds that there is substantial evidence at step five to find that there is work that "exists in the national economy that accommodates [Plaintiff's] residual functional capacity and vocational factors[.]" Walters, 127 F.3d at 529.

## VII. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[2] that Plaintiff's Motion, interpreted by the Court as a motion for judgment on the pleadings, **[Doc. 14]** be **DENIED,** and that the Commissioner's Motion for Summary Judgment **[Doc. 16]** be **GRANTED.**

Respectfully submitted,

_____ s/ C. Clifford Shirley, Jr. _____
United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).